Matthew B. Cox
Register No. 40171-018
Federal Correctional Complex-Low
P.O. Box 1031
Coleman, Florida 33521



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| INCARCERATED ENTERTAINMENT, LLC and EFRAIM DIVEROLI, an individual, | ) ) ) | Case No. _____ |
| Plaintiff, | ) ) ) | **Related Cases** |
| v. | ) ) | 8:17-cv-03108-MSS-JSS |
| | ) ) | 8:16-cv-1302-T-35UA (ICG) |
| MATTHEW B. COX, | ) ) | |
| Defendant. | ) ) ) | |

### DEFENDANT'S NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441 and 1446, and in accordance with 28 U.S.C. §§ 1331, 1338, 1367, and consistent with the Order from the Southern District of Florida (Exh. 1), Defendant Cox hereby files this Notice of Removal of the above-captioned case from the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, in which it is now pending, to the United States District Court for the Middle District of Florida. Because the issues raised by plaintiffs and defendant involve federal questions and are inextricably linked to matters proceeding before the United States District Court for the Middle District of Florida, removal to this federal court is proper.

The federal causes of action Mr. Cox has raised in his Complaint in the Middle District of Florida (Case No. 8:17-cv-03108-MSS-JSS (Dkt. 1)), mirror the earlier allegations he made against the plaintiffs back in March of 2017, when he moved to intervene in the lawsuit between Incarcerated Entertainment and Warner Bros. Pictures.

I. **INTRODUCTION**

1. Plaintiffs' state court Complaint was served upon Defendant on December 7, 2017. In accordance with 28 U.S.C. § 1446, Cox filed a timely motion seeking to have the state-court action removed to the Southern District of Florida. (See Exh. 2) The district court (Moreno, J.) "dismissed" Cox's motion "without prejudice" and granted "leave to refile this case in the United States District Court for the Middle District of Florida." (See Exh. *1*)  Cox's motion to alter and amend the Southern District's Order of Dismissal was denied on March 29, 2018. (See Exh. *3*)

2. Thus, in accordance with the Order of Dismissal from the Southern District of Florida, Mr. Cox hereby files this Notioce of Removal of the above-captioned case from the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, in which it is now pending, to the United States District Court for the Southern District of Florida. A copy of the state-court Complaint is submitted as Exhibit 4 to this Notice pursuant to 28 U.S.C. § 1446(a).

3. Having aggressively litigated what essentially amounts to two separate fedral actions against Warner Bros. Pictures ("Warner"), plaintiffs, after objecting to Cox's attempts to intervene in that lawsuit, have now initiated a

state-court action arising out of the same disputed conduct Cox has attempted to litigate in federal court. Worse yet, plaintiffs filed suit in state court after Cox had previously placed them on notice of his intent to pursue his claims in a separate lawsuit pursuant to a stand-alone federal complaint against Incarcerated Entertainment ("IE") et al.

4. Because the law governing removal does not permit forum shopping and because the issues raised by the plaintiffs and defendant involve substantial federal questions, removal to federal court is proper. And, because the issues raised by plaintiffs and defendant are inextricably intertwined to matters proceeding before the Middle District of Florida, removal to this forum is proper.

II. BACKGROUND

5. In April 2016, IE filed a Complaint in the Middle District of Florida against a number of persons and entities, including Warner. See Complaint (Dkt No. 1), Incarcerated Entertainment v. Warner Bros. Pictures, et al., Case No. 8:16-cv-01302-MSS-AAS (M.D. Fla.).*

6. IE's lawsuit arose out of Warner's movie, "WAR DOGS," a dark comedy based on the widely reported story of two young men who secured $300 million in U.S. Defense Department contracts to supply arms to the Afghan army. IE was formed by one of the arms dealers portrayed in the movie, Efraim Diveroli ("Diveroli"), and his business partner, Ross Reback ("Reback"), to monetize Diveroli's story. To that end, IE self-published Diveroli's memoir titled: "Once A Gun Runner ... The Real Story" ("Gun Runner")(Dkt. 86).

---

* Unless otherwise indicated, all docket citation references are to the court docket in Incarcerated Entertainment v. Warner Bros. Pictures, No. 8:16-cv-01302-MSS-AAS (M.D. Fla.)

3.

7. Defendant Matthew Cox is a published author. He writes true crime and memoirs. Cox has written five books, one of which is a memoir published by Skyhorse Publishing titled: "Generation Oxy." Cox also wrote the "Gun Runner" manuscript (from which the book is derived). Notably, Cox is listed as author on the book's cover. (Dkt. 86)

8. It should be noted that Defendant Cox is a federal prisoner. He selects the subject-matter for his writing from among the prisoner population at the Coleman Federal Correctional Complex (Low) in Florida. For "Generation Oxy," Cox selected Douglas Dodd as his subject. (Dodd is a convicted drug dealer who was then incarcerated at Coleman for distributing Oxycodone and other opiods). For "Gun Runner," Cox selected Diveroli as his subject. (Diveroli is a convicted fraudster who was then incarcerated at Coleman for criminal fraud.)

9. IE filed its original complaint in 2016 accusing Warner and eight others of a convoluted conspiracy to steal secrets from the Gun Runner manuscript and improperly using Diveroli's name and likeness in the movie War Dogs. (Dkt. 1 at ¶¶ 77-84, 88-89, 101.) Warner moved to dismiss IE's complaint. (Dkt. 40) Rather than oppose Warner's motion, IE hired new counsel and filed an "amended" complaint in late 2016 (Dkt. 78). In its new complaint IE dismissed all defendants but Warner, dropped all of IE's original causes of action, and accused Warner of falsely advertising War Dogs as a true story.

10. The new complaint's gravamen was that in marketing War Dogs, Warner sold the film as the "unadulterated truth" and as Diveroli's life story. (Dkt. 78 at ¶ 2) The new complaint alleged that Warner grossed more than $85 million by portraying War Dogs as Diveroli's "true story" when it was

not the true story. IE alleged that Warner's promotions were misleading and that its false advertising campaign hurt its ability to market the Gun Runner memoir. IE claimed it had been effectively shut out of the marketplace because consumers were more likely to purchase a ticket to War Dogs than to purchase the book. (Id., at ¶¶ 3, 72, 75)

11. In December, 2016, Warner moved to have IE's new complaint dismissed on various grounds. (Dkt 89) In its motion Warner conceded, however, that "War Dogs" was not a true story, when it knew all along that the film was a "fictionalized account" of the events. (Id. at 2-3, 7, 12)

12. In March 2017, Cox moved to intervene in the lawsuit between IE and Warner. Cox's motion was based on Rule 24 of the Federal Rules of Civil Procedure and 17 U.S.C. ¶ 501(b). (Dkt. 106 (motion to intervene); id, Dkt 106-1 (intervenor's complaint).) Cox moved to intervene after he had independently learned about IE having filed an "amended" complaint alleging entirely new false-advertising claims after dropping all of its original causes of action which Cox knew to be false and improperly manufactured by IE's principals for the purpose of extracting an unjust and unwarranted monetary settlement from Warner.

13. Defendant Cox, who is listed as a co-author on the cover of Gun Runner, identified himself as the book's author and rights holder. (Dkt. 106-1 at ¶¶ 2-3) Cox argued he had the right to intervene in the lawsuit because he is the rightful owner of the copyright and because his interests in the subject-matter were not being protected. Cox asserted claims against IE and both of its principals (Diveroli and Reback), whom Cox alleged had conspired to steal his copyright and had manufactured the fraudulent claims

brought against Warner in IE's original complaint. (Id., at ¶¶ 47, 55, 73-76, 79, 111-114)

    14. Mr. Cox contacted IE's new counsel and told Attorney Turkel that:

> I understand that you were not IE's counsel last April when Reback and Diveroli filed their original (fraudulent) lawsuit against Warner Bros. Pictures. It is further my understanding that your firm was retained to represent IE in connection with its second complaint against Warner after IE had decided to withdraw its original (frivolous) complaint.
>
> Look, I am not trying to visit the sins of the father upon the son. I am not suggesting that your firm was complicit in IE's scheme to defraud Warner by bringing its frivolous and objectively unreasonable claim that Reback and Diveroli had manufactured.
>
> Because of your late arrival in this matter, you have no first-hand basis to know what had in fact transpired earlier. Therefore, I am putting your law firm on notice that your clients -- Reback and Diveroli -- manufactured their fraudulent claim that Warner had stolen Diveroli's story to make its film WAR DOGS. Understand, I was present during the conversation between Reback and Diveroli when they hatched their scheme to manufacture their fraudulent claim for the purpose of extracting an unwarranted settlement. (At the appropriate time I will divulge all of the pertinent facts relevant to this scheme which included, inter alia, utilizing Diveroli's cousin in (Los Angeles) to set a trap in order to manipulate the son of Warner's president into taking possession of the Gun Runner manuscript so that Reback could then falsely claim that Warner had stolen elements of the story for use in its film.)
>
> This is the primary reason I could not participate in the earlier action. Not only have Reback and Diveroli committed a fraud on the court, Diveroli also committed a fraud on the Copyright Office (by omitting these facts from the copyright application.)

See Exh. 5: Email from Matthew Cox to Attorney Kenneth Turkel (Apr. 22, 2017) at ¶¶ 2-4) Thus, Cox put IE's then new counsel on notice that Diveroli had omitted material information pertaining to this scheme from

6.

the copyright application with the intent to defraud the Copyright Office into issuing the registration. Cox also put counsel on notice that IE had earlier committed a fraud on the court by making representations that were completely and verifiably false.

15. In the Intervenor's Complaint (Dkt. 106-1), Cox claimed ownership interest in the copyright and asserted nine claims against IE including (1) declaratory judgment of copyright ownership; (2) fraudulent copyright; (3) copyright infringement; and (4) fraud on the Copyright Office. Cox claimed that the Gun Runner manuscript was improperly characterized as a work made for hire and that Diveroli's copyright was invalid because material omissions were made in the registration application with the intent to deceive the Copyright Office.

16. With respect to the purported contract between Cox and Diveroli, Cox claimed the contract was void for fraud. (Dkt. 106-1 at ¶¶ 88-93)(First Cause of Action: Fraud in the Inducement); id., at ¶¶ 94-100 (Second Cause of Action: Breach of Partnership Formation). During correspondence with IE's attorneys Cox explained that:

> a review of the factual contentions IE made in its original complaint reveals that Diveroli had a preexisting contractual relationship with Guy Lawson and that Diveroli intentionally concealed from me during the course of our negotiations and throughout our relationship. ✭✭✭
>
> The representations that Diveroli made to persuade me to write the memoir were false and materially inaccurate. IE's (original) complaint conclusively establishes that the agreement between Diveroli and I was procured through fraud in the inducement. Based upon these acts, the agreement between Diveroli and I was void.
>
> If I am permitted to conduct discovery, I will be able to obtain evidence from IE and Diveroli to establish that the contract between Diveroli and

7.

> I is void and, therefore, that I am the rightful
> owner of the copyright. By establishing these
> facts, I will have substantiated my claim that IE
> lacks standing to sue Warner and that I am the
> proper plaintiff.

See Exh. 6: Email from Matthew Cox to Kenneth Turkel (Aug. 18, 2017) at ¶¶ 5-6.

17. For its part, Warner took "no position on Cox's motion to intervene." (Dkt. 110) IE, however, opposed Cox's motion. (Dkt. 108) IE claimed that Cox had no legally protectable interest and that he was "certainly capable of pursuing (his) claim in a separate lawsuit" pursuant to a stand-alone federal complaint. IE took no position notwithstanding Warner's observation that Cox's claims were not insubstantial. States Warner:

> If the Court lets the case proceed with Cox as a
> party, there are a host of detailed factual claims
> asserted by Cox against IE, Diveroli and Reback
> sounding in copyright, fraud and contract. The
> claims revolve around a central theme that Cox is
> legally and factually the sole author and owner
> of Gun Runner, as a matter of copyright and
> contract law, given that he alone authored the
> 2013 manuscript from which the published book was
> derived.

See Warner's Response to Motion to Intervene (Dkt. 110 at 3) Warner also indicated that if Cox were permitted to intervene, the court "should resolve Cox's claims against IE and Diveroli first" in order to "determine who is the proper plaintiff."

18. Because Cox claimed an ownership interest in the copyright, he argued that he had a right to intervene. The United States Copyright Act provides that a district court "shall permit the intervention" of a person "claiming an interest in the copyright." 17 U.S.C. § 501(b). Here, as shown below, the court did not permit Cox to intervene despite having a right to do so. This is all the more surprising in light of the substantial nature of his allegations:

8.

construing Cox's factual allegations as true, he made a prima facie case that he was the rightful owner of the Gun Runner copyright and that IE's copyright was invalid and had been procured through fraud.

19. On November 14, 2017, the court (Hon. M. Scriven) issued an Order dismissing IE's lawsuit against Warner after the parties had filed a stipulation of voluntary dismissal. (Dkt. 144 (Order); Dkt. 143 (stipulation).) In addition to dismissing IE's suit, the court denied all pending motions including, inter alia, Cox's motion to intervene.

20. Simply put, the court did not permit Cox to intervene despite having a substantive right to do so. 17 U.S.C. § 501(b). Worse yet, the court sat on Cox's motion for nine months before denying it. During that period, Cox was in contact with IE's attorney and had placed IE on notice that:

> If the court decides to grant my motion to intervene, I'll promptly submit my discovery demands. If, however, the court denies my motion to intervene, I will immediately file a notice of appeal with the Eleventh Circuit, and I will also initiate independent civil actions against Warner and IE which I will then move to consolidate.

See Exh. 6 at ¶ 3. Thus, IE knew Cox intended to pursue his claims in a separate lawsuit in the event he was not permitted to intervene.

21. The district court's inaction during the aforementioned nine month period afforded IE and Warner an opportunity to collude to deprive Cox of his property by entering a dismissal of the suit specifically designed to foreclose an adjudication of Cox's claims of copyright ownership, fraud on the Copyright Office, and fraudulent contract. This is not unfounded specualtion. It remains interesting that on the same day the court issued its Order dismissing IE's federal lawsuit against Warner (Nov. 14), IE, represented by new counsel, had

9.

its state-court Complaint prepared and ready to file against Cox. See Exh. 4: State Court Complaint at p. 5 (dated on the same day federal district court dismissed IE's suit).

22. The conclusion is unmistakable: IE and warner orchestrated the dismissal of the lawsuit in order to foreclose an adjudication of Cox's claims and to minimize Warner's losses from Cox's lawsuit. IE stood to have its causes of action dismissed because Cox had armed Warner with information necessary to assert valid defenses including a claim that IE had committed fraud on the court by manufacturing its fraudulent claim that Warner had stolen elements of Diveroli's story from the Gun Runner manuscript that Diveroli and Reback had manipulated a Warner surrogate into taking possession of the manuscript so that a plausible factual basis existed for IE to allege the fraudulent claims that its principals had improperly manufactured and concocted.

23. Warner recognized that the real party in interest was Cox. But with Cox handicapped by prison, Warner made an agreement with IE to minimize Warner's losses from Cox's lawsuit. With the collapse of its case imminent, by agreeing to a dismissal, IE received renumeration from warner to divert the imrpisoned Cox to an inconvenient forum and one bereft of the protections available in federal court to a federal prisoner.

## III. GROUNDS FOR REMOVAL

24. The present lawsuit is removable from state court to federal court pursuant to 28 U.S.C. §§ 1331, 1338, 1367(a) and 1441(a) because the issues raised by plaintiffs involve federal questions. This Court has federal question and supplemental jurisdiction over plaintiffs' claims for the reasons

identified below.

## A. Federal Copyright Law

25. This lawsuit is removable from state court because plaintiffs have asserted claims and seek relief which are governed by the federal Copyright Act, 17 U.S.C. § 301(b), itself enacted pursuant to the Copyright Clause of the U.S. Constitution.

26. A review of the state-court complaint (Exh. 4) demonstrates that the plaintiffs have alleged that Diveroli and Cox entered into a purported "work-for-hire" agreement which IE is seeking to have declared valid and enforceable. Id., at Relief at ¶ "a". And, a review of the complaint demonstrates that the plaintiffs have also alleged that Cox and Diveroli entered into a "work-for-hire" agreement while in federal prison and that Cox assigned his copyright ownership rights to Diveroli. Id., at ¶¶ 10, 12.

27. Notably, "work-for-hire" agreements of the type alleged here are creatures of federal copyright law which defines the nature of such agreements; the relationship between the contracting parties; the assignor's relationship to the copyright; and the necessary conditions for the agreement and assignment to be valid. See 17 U.S.C. § 101 et seq.

28. Without defendant conceding that any such relief is warranted, plaintiffs seek an Order declaring "That IE is the copyright holder to the book, Once A Gun Runner." See Exh. 4: State Compl., Relief at "c". A review of the state complaint also shows that plaintiffs have alleged that Cox assigned his copyright to Diveroli. Id., at ¶ 12.

29. Without defendant conceding the validity of plaintiffs' claims or that any such relief is warranted, **plaintiffs have asserted a cause of action**

11.

whose adjudication is inextricably governed by the federal Copyright Act --
and exclusively so, see 17 U.S.C. § 301. Thus, an adjudication of plaintiffs'
claims involve a federal question arising under the Copyright Act which
governs "work-for-hire" agreements and the transfer or "assignment" of copyright
ownership rights. See Stuart Weitzman v. Microcomputer Resources, 542 F.3d 859,
866-67 (11th Cir. 2008)(lawsuit seeking adjudication of intellectual property
ownership rights raised federal question under Copyright Act). Thus, this case
is removable on this basis alone.

30. Rhis case is also removable under 28 U.S.C. § 1441(a) because this
Court has original jurisdiction over the case under 28 U.S.C. §§ 1331, 1338
and 1367 because the foregoing federal questions appear on the face of the
plaintiffs' state-court complaint. See 28 U.S.C. § 1441(c); Pretka v. Kolter
City Plaza, 608 F.3d 744, 765 n. 20 (11th Cir. 2010)(defendant may remove on
the basis of "federal question jurisdiction ... where that question appears on
the face of the complaint.")

### B. Federal Contract Law

31. Alternatively, this lawsuit is removable from state court pursuant to
28 U.S.C. §§ 1331, 1338, 1367(a) and 1441(a) because plaintiffs have asserted a
claim whose resolution is governed by federal contract law and federal policy,
which deal with the ability of a ward of the federal government to enter into
contractural and business relationship of the type alleged to have occurred here.

32. A review of the state-court complaint establishes that plaintiffs have
conceded that at all times material to the parties purportedly entering into a
"work-for-hire" agreement, both Diveroli and Cox were federal inmates serving
their sentences at the Coleman Federal Correctional Complex in Florida. See

Exh. 4: State Compl., at ¶ 9 ("Diveroli and Cox met while inmates at the Federal Correctional Complex located in Coleman, FL."); id., at ¶ 10 ("On April 8, 2013, Diveroli and Cox executed a "Work-for-Hire Co-author Agreement.") Thus, plaintiffs have alleged that the purported contract was executed while both Diveroli and Cox were federal prisoners serving their sentences at FCC Coleman-Low.

33. Without defendant conceding that any such relief is warranted, plaintiffs seek an Order from the state court declaring the purported "work-for-hire" agreement a valid and enforceable contract. See Exh. 4: State Compl., Relief at ¶ "a". And, without defendant conceding the validity of plaintiffs' claims, plaintiffs have asserted a cause of action that involve a federal question.

34. A resolution of both issues raise federal questions because a determination of the validity of the purported agreement is governed by federal contract law, given the undisputed fact that both parties to the purported contract were federal inmates in a federal prison located on federal property when they are alleged to have entered into the agreement. Accordingly, it is clear that determining the validity of the purported contract raises federal questions because a federal inmate's capacity to enter into contractual relationships is governed by federal law given the prisoner's status as a ward of the federal government. Likewise, a determination of whether a federal inmate is even capable of entering into a valid contractual relationship with another federal inmate while both men are incarcerated on federal property involves a federal question.

13.

35. In addition, determining the validity of the purported "work-for-hire" agreement raises another federal question in light of the undisputed fact that federal policy (which all federal prisoners are subject) prohibits federal inmates from entering into business relationships with one another. Also, federal policy forbids federal inmates from conducting business in which one inmate hires another to work, such as the purported "work-for-hire" arrangement alleged to have occurred here.

36. Finally, federal policy expressly prohibits federal inmates from exchanging anything of value with another inmate, such as the purported "assignment" of copyright ownership rights alleged to have occurred here. Indeed, whether a federal inmate is even capable of assigning copyright rights to another inmate raises an additional federal question.

37. Thus, determining the validity of the purported "work-for-hire" agreement and/or the purported assignment of copyright ownership rights the plaintiffs have alleged in state court to have occurred involve federal questions in light of federal policy which deals with the capability of a federal inmate to enter into contractual or business relationships with another inmate while both of them are in federal prison.

### C. Forum Shopping

40. The present lawsuit is removable from state court to federal court because the issues raised by plaintiffs involve federal questions and are inextricably linked with defendant's claims before the Federal District Court for the Middle District of Florida. See Complaint, Matthew Cox v. Incarcerated Entertainment, et al., No. 8:17-cv-03108-MSS-JSS (M.D. Fla.)

14.

41. As indicated above, in March of 2017, Cox moved to intervene in the Middle District of Florida lawsuit between plaintiffs and Warner. Cox asserted that he was the author and rights holder of the Gun Runner manuscript and that he, not IE, was the injured party. Cox further asserted that IE had improperly manufactured its fraudulent claim that warner had stolen elements of Diveroli's story from the manuscript to make the film War Dogs. With respect to the purported contract between Cox and Diveroli, Cox alleged the contract was void for fraud and, therefore, unenforceable.

42. In November 2017, the district court (Scriven, J.) dismissed IE's lawsuit before ruling on Cox's motion to intervene. Thereafter, IE initiated a state court action seeking to have the purported agreement between the parties declared valid and enforceable. Without defendant conceding that any such relief is warranted, plaintiffs seek an Order from the state court declaring that IE is the copyright holder for the book (Once A Gun Runner) and that Cox had assigned his copyright ownership interest to Diveroli.

43. A review of the state court complaint makes clear that plaintiffs are seeking to have declared valid the very **same** purported contract that Cox, eight months earlier, had alleged in federal court was void for fraud. (See Intervenor's Complaint )Mar. 2017)(Dkt. 106-1) at ¶¶ 88-100 (first and second causes of action). And this is also the same purported contract that Cox has, likewise, alleged is void for fraud in his stand-alone federal complaint. (See Complaint, Case No. 8:17-cv-03108-MSS-JSS (M.D. Fla.) at ¶¶ 193-206, 234-240 (fifth, sixth and tenth causes of action). This is also the same purported contract that Cox, in an earlier email to IE's former counsel, alleged was void for fraud.

44. IE disingenuously initiated its state court action after objecting to Cox's earlier efforts to intervene in the federal suit so that he could challenge the validity of the very same purported contract that IE is now asking a state court to declare valid. Rather than litigate the validity of the purported contract in a federal forum where Cox could demonstrate IE's fraud on the Copyright Office and fraud on the court through its actions in that very case, IE objected to Cox's request to intervene.

45. IE desperately sought to keep Cox out of that federal lawsuit after he had notified the parties that he was in a position to arm Warner with direct evidence that it could use to show that IE's principals had improperly manufactured IE's fraudulent claim that Warner had stolen elements of Diveroli's story from the Gun Runner manuscript by manipulating a Warner surrogate (the son of Warner's president) into taking possession of the manuscript so that IE could allege the fraudlent claims it mafe against Warner in its Original Complaint. IE agreed to dismiss the lawsuit after Warner agreed to settle the case before Cox was permitted to intervene.

46. Now that IE has succeeded in manipulating the federal case to keep Cox's fraud on the court allegations from being adjudicated in a federal forum competent to sanction IE and invalidate the copyright it now seeks to have a state court declare valid based on the same purported contract that Cox -- eight months earlier in federal court -- had alleged was void for fraud.

47. Because the law governing removal does not permit such a blatant attempt at shopping for a forum, removal to federal court is proper. As the Eleventh Circuit has explained: "The removal process was created by Congress to protect defendants. Congress did not extend such protection with one hand,

and with the other give plaintiffs a bag of tricks to overcome it." <u>Legg v. Wyeth</u>, 428 F.3d 1317, 1325 (11th Cir. 2005). Accordingly, removal of IE's complaint to a federal forum is proper.

**D. Further Considerations Warranting Removal**

48. Further support for this court exercising its removal jurisdiction is the manifest nature of the allegations that Cox has made in his earlier motion to intervene (Dkt. 106-1) and has re-alleged in his stand-alone Federal Complaint. Cox believes that a federal court is a better forum since the contract analysis will be made under federal contract law not Florida law, since both parties to the purported agreement were federal inmates serving their sentences in a federal prison located on federal property.

49. A further detriment to the state forum is that a material witness -- Ross Reback -- has recently passed away. The federal court is already aware of Mr. Reback and his involvement. Plus, Reback's communications with Cox through the Federal Bureau of Prisons inmate email system ("Corr-Links") will be discoverable through federal court, but not discoverable via a state court discovery order for among other reasons, federal privacy laws. In order for Cox to prove his claims of fraud against IE and Diveroli, Cox will need to conduct limited discovery to obtain evidence that is currently in the possession of federal prison officials (i.e., both Cox and Diveroli's "Corr-Links" email transmissions; recorded phone calls between Reback and Cox; Cox's prisoner financial account history to show Reback's deposits to reimburse expenses, et cetera).

50. Unless this court exercise its removal jurisdiction, IE will have succeeded in securing a litigation advantage through forum shopping.

## NOTICE

51. Pursuant to 28 U.S.C. § 1446(d), Cox has provided written notice of the filing of this Notice of Removal, along with copies of this Notice and all attachments, to all adverse parties and with the Clerk for the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

52. A copy of this Notice is being filed by Cox with the state court where this action is pending, after the filing in this court of this Notice in compliance with 28 U.S.C. § 1446(b).

## CONCLUSION

Because plaintiffs' state-court complaint raises federal questions, this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, 1367 and 1441(a).

WHEREFORE, notice is given that this action is removed from the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, in which it is now pending, to the United States District Court for the Middle District of Florida. Mr. Cox respectfully requests that this Court exercise jurisdiction over this matter.

Dated: April 19, 2018                    Respectfully submitted,

                                         _____
                                         Matthew Cox