EXHIBIT 1

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
**Case Number: 18-20023-CIV-MORENO**

INCARCERATED ENTERTAINMENT, LLC
and EFRAIM DIVEROLI,

        Plaintiffs,

vs.

MATTHEW BEVAN COX,

        Defendant.

_____/

### ORDER OF DISMISSAL WITHOUT PREJUDICE

THIS MATTER is before the Court upon a *sua sponte* review of the record.

This case is duplicative of two related cases in the Middle District of Florida: (1) 8:16-cv-01302-MSS-ASS (presently on appeal before the United States Court of Appeals for the Eleventh Circuit) and (2) 8:17-cv-03108-MSS-JSS. Accordingly, it is

**ADJUDGED** that this action is DISMISSED WITHOUT PREJUDICE, with leave to refile this case in the United States District Court for the Middle District of Florida. It is also

**ADJUDGED** that all pending motions are DENIED AS MOOT with leave to refile if appropriate.

DONE AND ORDERED in Chambers at Miami, Florida, this _____ of February, 2018.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Matthew Bevan Cox, Pro Se
40171-018
Coleman Low Federal Correctional Institution
Inmate Mail/Parcels
Post Office Box 1031
Coleman, FL 33521

EXHIBIT 2

## UNITED STATES DISTRICT COURT FOR THE
### SOUTHERN DISTRICT OF FLORIDA
#### Miami Division

## Case Number: 18-20023-CIV-MORENO

INCARCERATED ENTERTAINMENT, LLC
and EFRAIM DIVEROLI,

      Plaintiffs,

vs.

MATTHEW BEVAN COX,

      Defendant.

_____/

## NOTICE OF COURT PRACTICE IN REMOVAL CASES

THIS CAUSE came before the Court upon a *sua sponte* review of the record.

Counsel for the **non-removing party** must file a motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction within 30 days after the filing of the notice of removal under 28 U.S.C. § 1446(b).

Counsel for the **removing party** is directed to file a *Removal Status Report* no later than **January 18, 2018**. In addition to the *Removal Status Report*, counsel for the removing party must file copies of all records and proceedings in the state court proceedings by the aforementioned date. Failure to file a timely *Removal Status Report* shall be grounds for remand. Additionally, Counsel's failure to timely file all relevant state court pleadings shall be interpreted as an abandonment of Federal jurisdiction and will result in remand of the case.

The *Removal Status Report* shall contain the following:

1. A plain statement of the nature of the claim and any counterclaim, cross-claim, or third-party claim, made in state or federal court including the amount of damages claimed and any other relief sought.

2. A plain statement of the grounds for removal and a listing of all parties to the action, including parties to any third party claim.

3. A list of all pending motions.

4. A brief statement by each Defendant explaining whether or not each has joined the notice of removal.

5. State whether the Defendant has removed the action within 30 days after the receipt by the Defendant of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based.

If the removing party has provided some or all of the information requested above, briefly summarize the information requested and direct the Court to the location of the information in the record. Failure of the removing party or parties to timely provide the information requested in the *Removal Status Report* above or required pursuant to 28 U.S.C. § 1446(a) may result in remand of the action.

Counsel for the removing party shall provide copies of this Notice to all concerned parties.

DONE AND ORDERED in Chambers at Miami, Florida, this ___3 7___ of January 2018.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

Matthew Bevan Cox, *Pro Se*
40171-018
Coleman Low Federal Correctional Institution
Inmate Mail/Parcels
Post Office Box 1031
Coleman, FL 33521

EXHIBIT 3

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
**Case Number: 18-20023-CIV-MORENO**

INCARCERATED ENTERTAINMENT, LLC
and EFRAIM DIVEROLI,

    Plaintiffs,

vs.

MATTHEW BEVAN COX,

    Defendant.

             /

## ORDER DENYING DEFENDANT'S MOTION UNDER RULE 59(e) TO ALTER AND AMEND THIS COURT'S FEBRUARY 27, 2018 ORDER OF DISMISSAL

THIS CAUSE came before the Court upon Defendant's Motion Under Rule 59(e) to Alter

and Amend This Court's February 27, 2018 Order of Dismissal **(D.E. 11)**, filed on **March 26,**

**2018**.

THE COURT has considered the motion, the pertinent portions of the record, and being

otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this _____ of March 2018.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

Matthew Bevan Cox, Pro Se
40171-018
Coleman Low Federal Correctional Institution
Inmate Mail/Parcels
Post Office Box 1031
Coleman, FL 33521

EXHIBIT 4

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CASE NUMBER:

INCARCERATED ENTERTAINMENT
, LLC., a Florida Limited Liability
Corporation, and EFRAIM DIVEROLI,
an individual,

       Plaintiffs,

v.

MATTHEW BEVAN COX,
an individual,

       Defendant.

_____/

## COMPLAINT

Plaintiffs Incarcerated Entertainment, LLC., ("IE") and Efraim Diveroli ("DIVEROLI"), by and through

undersigned counsel, sue the Defendant Matthew Bevan Cox ("COX"), and as grounds therefore, alleges as

follows:

### I.    JURISDICTION

1. This is an action for Declaratory Judgment pursuant to Chapter 86, Florida Statutes.

2. Plaintiff IE is a Florida limited liability company.

3. Plaintiff, DIVEROLI, is a thirty-year-old entrepreneur and former international arms dealer, who resides
   in Miami-Dade County, Florida.

4. Defendant COX is an inmate at the Federal Correctional Complex, Coleman in Sumter County, Florida.

5. Venue is proper in Miami-Dade County, Florida pursuant to Florida Statute § 47.011. The parties entered
   into a written agreement, described below, in which they agreed that jurisdiction and venue were proper
   in this Court.

6. All conditions precedent to the filing of this action have been satisfied, excused, and/or waived.

7. Plaintiff has retained counsel to prosecute this matter and has obligated itself to pay a reasonable fee for counsel's service along with all associated costs.

## II.   FACTS

8. DIVEROLI's sensational backstory is that of a twenty-one year old high school dropout whose company was awarded several hundred million dollars in arms and ammunition contracts by the United States government during the global war on terror.

9. COX is a convicted mortgage fraudster who owes over $5,000,000 in restitution to his victims. DIVEROLI and COX met while inmates at the Federal Correctional Complex located at Coleman, FL.

10. On April 8, 2013, DIVEROLI and COX executed a "WORK-FOR-HIRE CO-AUTHOR AGREEMENT" ("WFH Agreement"). A true, complete, and authentic copy of the WFH Agreement is attached as Exhibit A.

11. The object and purpose of the WFH Agreement was for COX to assist DIVEROLI in writing a full length memoir of DIVEROLI as the subject and author and COX as the co-author for hire and to assign all ownership rights in the memoir and forthcoming copyright to Diveroli.

12. Paragraph 2 of the WFH Agreement clearly assigned the copyright for any work created under the WFH Agreement to DIVEROLI.

13. Consideration provided by DIVEROLI to COX for his work-for-hire services are outlined in paragraph 11 of the WFA Agreement. DIVEROLI paid COX $500 and agreed to future payments of "ten percent (10%) of gross royalties actually received directly by Subject/Author or any business or corporation set up to receive income from the sale, license or disposition of the Work." DIVEROLI also agreed to pay COX "[f]ive percent (5%) of gross royalties actually received directly by Subject/Author or any business

2

or corporation set up to receive income from the sale, license or disposition of any derivatives and/or ancillary products developed from the Work."

14. In accordance with the WFH Agreement, a manuscript was completed and titled "Once a Gun Runner".

15. On February 20, 2014, Diveroli registered *Once a Gun Runner* with the United States Copyright Office, which provided Registration Number TXu001911676.

16. On April 25, 2016, Diveroli submitted for recording with the United States Copyright Office a corrective copyright registration for *Once a Gun Runner*, which was filed to correct numerous errors and inadvertent omissions in the original Copyright registration. A true, complete, and authentic copy of the corrective copyright registration is attached as Exhibit B. The corrective copyright registration provides that Cox transferred his rights in the copyright to Diveroli by written assignment.

17. On April 25, 2016, DIVEROLI assigned all rights, title, and interest in the *Once a Gun Runner* copyright and the works contained therein to IE.A true, complete, and authentic copy of the assignment is attached as Exhibit C. The assignment was also recorded with the United States Copyright Office on May 27, 2016.

18. Additionally, on April 25, 2016, DIVEROLI assigned all rights, title, and interest in his life story rights to IE. A true, complete, and authentic copy of the assignment of life story rights is attached as Exhibit D.

19. Warner Bros. Pictures released the motion picture *War Dogs* in 2016, which was purportedly "based on" the story of DIVEROLI and his company, AEY, Inc.

20. IE published *Once a Gun Runner* and has sold approximately 1,030 copies as of November 14, 2017.

21. On multiple occasions, IE attempted to ascertain account information to pay COX his percentage of the gross proceeds from the sale of *Once a Gun Runner*. On each occasion he declined to provide payment instructions because he owes criminal restitution and does not want the money to be seized by the government.

22. In total, IE has lost tens of thousands of dollars on the book.

3

23. IE filed a lawsuit against Warner Bros. Pictures, alleging, *inter alia*, Lanham Act false advertising violations. The suit was filed in the United States District Court in the Middle District of Florida, case number 8:16-CV-1302-T-35UA (IGC).

24. After the case had been pending for over a year, COX sought to intervene on the basis that he is the legal copyright holder of DIVEROLI's memoir, *Once a Gun Runner*.

25. Before filing his Motion to Intervene, COX had never asserted ownership rights in the *Once a Gun Runner* copyright and had never made a request or demand for payment pursuant to the WFH Agreement.

26. On November 14, 2017, before the Court ruled on COX's Motion to Intervene, IE filed a Joint Stipulation of Dismissal With Prejudice.

27. IE and DIVEROLI recognize their obligation to compensate COX for 10% of the gross sales proceeds from the sales of *Once a Gun Runner* pursuant to the WFH Agreement.

### III.     COUNT I- DECLARATORY JUDGMENT

28. Plaintiffs re-allege and re-incorporate paragraphs 1-27 as if stated fully herein.

29. This is an action for Declaratory Judgment pursuant to Fla. Stat. § 86.021 wherein Plaintiffs have a bonafide, actual, present, and practical need for a determination by this Court as to Plaintiffs' rights and status with regards to the WFH Agreement, DIVEROLI's life rights, and the *Once a Gun Runner* manuscript and book.

30. According to his attempted intervention into IE's federal court lawsuit against Warner Bros. Pictures, COX claims some right(s) in the *Once a Gun Runner* copyright or, potentially, in Diveroli's life story.

31. Plaintiffs contend that IE owns all rights to Diveroli's life rights and life story and to *Once a Gun Runner,* including all rights in the copyright.:

4

WHEREFORE, Plaintiff respectfully requests that this Court take jurisdiction of this matter and the parties hereto and enter judgment declaring

a. The only controlling agreement between the parties is the April 8, 2013 Work-For-Hire Co-Author Agreement;

b. That Defendant COX has no interest in Plaintiff DIVEROLI's life rights or life story;

c. That IE is the sole copyright holder to the book, *Once a Gun Runner*;

d. That IE has the sole and exclusive right to sell, license, and dispose of the book and any related or derivative products.

e. That Defendant COX has no right to receive any compensation related to the book other than 10% of gross royalties actually received by DIVEROLI and/or IE from the sale, license, or disposition of the book and 5% of gross royalties actually received by DIVEROLI and/or IE from the sale, license of disposition of any derivatives and/or ancillary products developed from the book.;

f. Make a determination as to what amounts may be owed to either Party;

g. Award all costs as are equitable pursuant to Fla. Stat. 86.081; and

h. Grant any other relief as might be necessary.

DATED: November 14, 2017

Respectfully Submitted,

Law Offices of Matthew Troccoli, PA
Attorney for the Plaintiffs
2250 SW 3rd Ave., Ste. 303
Miami, FL 33129
Tel.: (786) 558-3850
matthewtroccoliesq@gmail.com

By:/s/ Matthew Troccoli
Matthew J. Troccoli, Esq.
FL Bar No.: 0063454

-------------------------------------------------------------------------------------------

FROM: Weaver Esq, A Nicole
TO: 80649004
SUBJECT: Co-Author Agreement pt 1
DATE: 04/08/2013 04:00:03 PM

WORK-FOR-HIRE CO-AUTHOR AGREEMENT

This Agreement (hereinafter, "Agreement") is made and entered into on (date $\underline{4-8-2013}$), by and between Efraim Diveroli, a resident of the state of Florida who s address is stated below (hereinafter, "Subject/Author") and CO-AUTHOR a resident of the state of Florida who s address is stated below (hereinafter, "Co-Author")

### RECITALS

A.      WHEREAS, Subject/Author desires to have a work (full length memoir) written concerning his personal experiences, which current draft shall be annexed hereto and made a part hereof (hereinafter referred to as the "Work"); and
B.      WHEREAS, Subject/Author desires Co-Author to act as a Writer-For-Hire and preform the services that would more commonly be associated with a Writer/Work-For-Hire, but shall supply Co-Author with credit as a collaborative Co-Author; and
C.      WHEREAS, Co-Author has agreed to work as a Writer-For-Hire and write in collaboration with Subject/Author an original story outline based on true events of the subjects life, referred to in this agreement as the "Work," and
D.      WHEREAS, The parties desire to establish all their rights and obligations in and to the work;
E.      WHEREAS, Co-Author understands and agrees that this Agreement is intended to be a pre-incorporation Agreement, and that the business or company set up to receive income from the sale, license or disposition of the Work shall, upon said business or corporation being formally recognized under the law/incorporated, adopt this Agreement and assume all rights and liabilities set out in this Agreement, and Efraim Diveroli will no longer be personally liable for this Agreement;

NOW THEREFORE, in consideration of the mutual covenants hereinafter set forth, the parties agree as follows:

1.      COLLABORATION. Although, the parties will be joint authoring the Work and shall be collaborating in the writing of the Work the ownership of the Work shall rest entirely in the Subject/Author.
2.      COPYRIGHT.
a.      All copyrights, renewals, and extensions thereof, in and to the material contained in the Work, shall be secured by Subject and held in his name, as the sole and exclusive author and proprietor thereof, together with all literary property and any other rights in the Work, the title thereof, and the characters and characterizations therein, in all language, forms, and media now or hereafter known. The foregoing shall include all literary rights, copyrights, and all intangible property rights of any kind or nature whatsoever in any oral or written material prepared for or by or made available to, Co-Author in connection with the Work and all intangible property rights in any tape recording made pursuant hereto. With respect to any oral or written material which shall not be directly or indirectly included or incorporated in the work, all rights in and to such material shall be the sole property of Subject.
b.      Co-Author acknowledges that the resulting efforts, drafts, writing, drawings and illustrations, other work, such as forewords, afterwords, pictorial, maps, charts, tables, editorial notes, arrangements, answer material for tests, bibliographies, appendixes, indexes, "instructional text", pictorial, graphic work and/or all other materials that come from such collaboration (regardless of if they are considered "supplementary works") are covered by this Agreement, and as such are 'works made for hire' pursuant to 17 USCA §101(2). All authorship and ownership rights shall belong to the Subject/Author pursuant to 17 USCA §201(b).
c.      On completion of the work, it shall be registered in the name of Subject /Author, as the author and a copy shall be registered with the Copyright Office.
d.      All drafts, prior versions, notes, outlines or other materials not actually registered shall still be considered the sole and exclusive property of the Subject/Author, and a non-registered Copyright shall vest in Subject/Author.
e.      Co-Author agrees that at the time or original oral agreement (prior to the moment of creation) that all Works created prior to this Agreement were to be considered works-made-for-hire.
f.      Co-Author understands and agrees that he shall have no right, title, or interest of any kind or nature whatsoever in the Work or receive any compensation whatsoever except as provided herein.
g.      In the event that any of Co-Author s services, created under this Agreement, in whole or in part, are not deemed to be a "work made for hire" for the Subject/Author, then Co-Author hereby irrevocably and absolutely assigns, conveys and grants to Subject/Author or any Company or business set up to receive income from the sale, license or disposition of the Work, its successors, designees, and assigns :
i.      all rights, title and interests of every kind, nature and description in and to all of Co-Author s services, rendered under this Agreement without reservation whatsoever, and
ii.      irrevocably and absolutely assigns, conveys and grants to Subject/Author all world-wide copyrights and renewals and

-----------------------------------------------------------------------------------------------------

extensions thereof under any present or future laws throughout the world.

3. NATURE OF DUTIES.

a. Co-Author shall write the Work with Subject/Author and Subject shall provide Co-Author with such data and information as may be required to collaboratively write the Work. In researching the Work, Co-Author shall interview Subject s experiences. Subject shall grant Co-Author access to pertinent documents, where available, and will use Subject s best efforts to ensure Co-Author access to interviews with Subject s former colleagues, family and/or other aides where relevant and necessary for the Work.

b. Each party agrees to fully consult with the other and to make himself fully available to the other, in person or by telephone, as each shall reasonably require, at reasonable times and places, and in all respects to render the fullest cooperation to facilitate the research preparation, writing and review of the work.

4. NON-EXCLUSIVE SERVICES. Co-Author shall render his services in connection with the Work on a non-exclusive basis; provided, however, any services rendered by Co-Author for any other person, firm or corporation, or for Co-Author own account, shall not hamper or interfere with Co-Author s obligations hereunder. *n3C   EL*

5. TIME OF COMPLETION. It is contemplated that the work will be completed by not later than  10 - 8 - 2013  [date]; provided, however, that failure to complete the work by this date shall not be construed as a beach of this agreement on the part of either party. However, each party shall use its best efforts to perform his obligations under the contract so that the manuscript for the work is ready for submission to a publisher on or before  10 - 8 - 2013  (date). *n3C   EE*

6. CHANGES Co-Author agrees to incorporate in the manuscript of the Work, all suggestions, instructions, additions, and/or changes as Subject Subject s Agent and/or Subject s publisher may request.

7. APPROVAL: Subject shall have the complete right of approval of the final text of the Work, including but not limited to, captions, photographs, index, title, design, graphics, book jacket, and credit. Subject, acknowledges that final text of the book would be also subject to publisher s approval. Therefore, "complete approval" by the subject may be limited by contract with publisher.

8. WITHDRAWAL FROM COLLABORATION OR TERMINATION. If, prior to the completion of the work, either party voluntarily withdraws from collaboration or a dispute causes withdraw, or a dispute causes withdrawal of collaboration, then only Subject/Author s:...i have the right to complete the Work alone or in conjunction with another collaborator or collaborators. In the event that Co-Author voluntarily withdraws or is terminated for cause, the compensation to Co-Author, as provided in Section 11(b) and (c) shall be revised based on quantum meruit or arbitration.

9. CREDIT. Any contract for the sale or other disposition of the work, where the work has been completed by the parties in accordance with this agreement, shall require that the story credit be given to the Authors in the following manner: Co-Author: CO-AUTHOR on the book cover and any other place where authorship credit is customarily included on a book and on advertising and promotion of the Work. Should the Work not be completed in accordance with this agreement so as long as 75% of work has been completed by Co-Author the same credit as stated above shall be given. If 75% of work has not been completed by Co-Author credit shall be determined by mutual agreement or arbitration (using the American Arbitration Association, under its rules.)

10. EXPENSES. Co-Author shall be reimbursed all reasonable proven monthly receipt expenses. Reasonable expenses shall be limited to the definition of copying, printing, mailing that is under fifty US dollars ($50.00) unless pre-approved in writing by Subject/Author). Co-Author shall have fifteen (15) days from the close of each month to submit any receipt expenses that Co-Author desires to be reimbursed. Subject/Author is not responsible for any expenses submitted by Co-Author by said date. However, if, Subject/Author does decide to repay a delayed expense it shall not be viewed as a waiver of this requirement.

11. PAYMENT. In consideration of all the services rendered and to be rendered by Co-Author for Subject hereunder and for all the rights granted and to be granted to Subject hereunder, Subject agrees to pay Co-Author compensation as follows:

a. Five hundred US dollars ($500) upfront payment which Co-Author, hereby acknowledges as paid in full,

b. Ten percent (10%) of gross royalties actually received directly by Subject/Author or any business or corporation set up to receive income from the sale, license or disposition of the Work.

c. Five percent (5%) of gross royalties actually received directly by Subject/Author or any business or corporation set up to receive income from the sale, license or disposition of any derivatives and/or ancillary products developed from the Work.

12. NON-DISCLOSURE:

a. Co-Author agrees that he will not, whether during the term of this Agreement or thereafter, use any material or information provided to Co-Author by Subject in any manner whatsoever other than in the preparation of the Work. Co-Author further agrees not to disclose to any third person, firm or corporation, or authorize to publish or authorize to be caused to be published, any information or personal experience relating to Subject, his family, his principal aides, or any employee of Subject without Subject's written consent first had and obtained. Co-Author grants to Subject the right to institute legal proceedings to prevent such acts or any of them by Co-Author, it being acknowledged by Co-Author that information may become available to him having a special, unique, extraordinary and confidential nature, of great and peculiar value to Subject, and that Subject would not have an adequate remedy at law if Co-Author should use or disclose such material or information to another without Subject's written consent, or in the event that Co-Author should authorize the publication of or cause to be published any such information, including but not limited to, a fictionalization of the material which becomes available to Co-Author by reason of this Agreement. Publication of the Work, with Subject's written approval, shall not be deemed a breach of this provision.

*EP*                                                                                                          *n3C*

---------------------------------------------------------------------------------------------------------

5.     Co-Author agrees that all terms of this Agreement shall remain confidential and shall not be disclosed to any person or entity by any party hereto, or by the attorney of Co-Author. Co-Author expressly represents and warrants that it has not publicized and will not publicize in any manner, either personally or through an agent or representative, or undertake to or aid or assist any third party in publicizing or exploiting in any form whatsoever, by any means whatsoever, in any medium whatsoever, the terms of this Agreement. In the event of the following situations, the terms may only be disclosed to the minimum extent necessary: (i) insofar as disclosure is required pursuant to a subpoena issued by a court of competent jurisdiction; (ii) as reasonably required for the purpose of complying with state and federal laws, or (iii) if necessary to enforce the terms of this Agreement in any proceeding.

FD

MJC

-----------------------------------------------------------------------------------------

FROM: Weaver Esq, A Nicole
TO: 80649004
SUBJECT: co-author agreement pt 2
DATE: 04/08/2013 04:00:03 PM

13.    REPRESENTATIONS AND WARRANTIES BY SUBJECT. Subject hereby represents, warrants and agrees that:
(a) He has no other contractual commitments which will interfere or conflict with the performance of his obligations hereunder;
(b) All material furnished by Subject shall be his own work and shall not infringe upon or violate any copyright, proprietary right
or the right of privacy, or constitute a libel or slander against or violate any common law right of any person, firm or corporation,
and any adverse claim that the Work invades the right of privacy or libels, slanders, or violates any common law right or any
other right of any person, firm or corporation by reason of any material furnished by Subject, will be defended by Subject.
(c) He will indemnify and hold harmless Co-Author, his successors, executors, administrators and assigns, from and against
any and all claims, demands, suits, losses, costs, expenses (including any amount paid by Co-Author in settlement, but only if
consented to by Subject) which may be obtained against, imposed upon, or suffered by Co-Author, his executors,
administrators, successors, and assigns, by reason of the utilization consistent with this Agreement of any material furnished by
Subject.
14.    REPRESENTATIONS AND WARRANTIES.
a.    Co-Author hereby represents, warrants and agrees that:
i.    He has no other contractual commitments which will conflict or interfere with the performance of his obligations
hereunder;
ii.    All material written by him, except all material furnished by Subject, shall be his own work and shall not infringe upon or
violate any copyright, proprietary right or the right of privacy or constitute a libel or slander against or violate any common law
right of any person, firm or corporation, and any adverse claim that the Work invades the right of privacy or libels, slanders, or
violates any common law right or any other right of any person, firm or corporation by reason of any material furnished by Co-
Author will be defended by Co-Author;
iii.    He will indemnify and hold harmless Subject, his successors, executors, administrators and assigns, from any and all
claims, demands, suits, losses, costs, expenses (including any amount paid by Subject in settlement, but only if consented to
by Co-Author) which may be obtained against, imposed upon, or suffered by Subject, his executors, administrators, successors,
and assigns, by reason of the utilization consistent with this Agreement of any material furnished by Co-Author.
b.    All warranties and representations of Subject and Grant shall survive the termination of this Agreement.
15.    DEATH OF SUBJECT OR CO-AUTHOR.
a.    If Subject dies before a publisher accepts the manuscript of the Work:
i.    Subject's executors, administrators or such other person as Subject shall designate in his will (hereafter
"Representative") shall confer with Co-Author to determine whether or not a manuscript for the Work may be completed. If the
manuscript is in the opinion of the Subject's Representative at a point at which it may be completed, Subject 2 shall continue
and complete his services in accordance herewith;
ii.    If Subject's Representative is of the opinion that the manuscript is not at a point at which it may be completed, Co-
Author shall immediately return to the Representative all materials of any kind produced or gathered hereunder; Co-Author shall
retain all funds previously paid him but shall not be entitled to any additional payment, provided that if the manuscript of the
Work is subsequently published in substantially the form prepared by Co-Author before termination hereunder, Co-Author shall
be entitled to be paid in full pursuant to this Agreement.
b.    If Co-Author dies within six months after the commencement of his services, his estate:
i.    Subject/Author acknowledges that a great deal of work has been completed, therefore, Co-Author s estate shall not be
liable to repay to Subject the compensation previously paid to Co-Author in Section 11(a). ; and
ii.    If Co-Author dies after six months from the commencement of his services hereunder, but before a published accepts
the manuscript of the Work, his estate shall have the right to retain all compensation previously paid to Co-Author. If the Work
is accepted by a publisher in substantially the form left by Co-Author, Co-Author s estate shall retain the fee paid and provided
for in clause 11(a) of this Agreement, and shall be entitled to receive the compensation provided for in clause 11(b)and 11(c) ,
less any amounts already paid under those provisions and less any reasonable expenses incurred by Subject in having
services performed that would be been performed by Co-Author hereunder had he lived.
iii.    If Co-Author dies before acceptance by Subject and a publisher of the Work, Co-Author s estate shall turn over to
Subject all material for the Work prepared by Co-Author obtained by Co-Author from a third party, or contributed by him to
Subject to him, and all rights therein and thereto shall be the sole property of Subject.
16.    INDEPENDENT CONTRACTOR. Co-Author s relationship to Subject hereunder is that of an independent contractor.
Co-Author represents and warrants that Co-Author has the absolute right and authority to enter into this Agreement as an
independent contractor and Co-Author shall indemnify Subject and hold Subject harmless from any liability, claims and
demands made against Subject for all commissions, unemployment and disability insurance, social security, income tax and
other withholdings, deductions and payments required by Federal or state laws to be paid by Co-Author.
17.    It is expressly understood that the parties do not, by this Agreement, intend to form, nor shall this Agreement be

---

construed to constitute, a partnership between them.

18.     UNIQUE SERVICES: Co-Author s acknowledges that the services to be rendered by Co-Author s hereunder are of a special, unique, unusual, extraordinary and intellectual character which gives them a peculiar value, the loss of which cannot be reasonably or adequately compensated in damages in an action at law, and that a breach by Co-Author of any of the provisions of this Agreement will cause Company great and irreparable injury and damage. Co-Author expressly agrees that Company shall be entitled to the remedies of injunction and other equitable relief to enforce this Agreement or to prevent a breach of this Agreement or any provision hereof, which relief shall be in addition to any other remedies, for damages or otherwise, which may be available to Company.

19.     JURISDICTION. This Agreement shall in all respects be construed in accordance with and governed by the laws of the State of Florida, without regard to conflict-of-law rules. In the event of litigation of this Agreement, exclusive jurisdiction and venue shall rest in the state or federal court serving _Dade_ County, Florida, and each of the parties expressly consents to personal jurisdiction and agrees to waive any challenge to venue or personal jurisdiction in such court. This Settlement Agreement its validity, its construction, and all matters relating to the relationship between the parties regarding the services shall be governed by Florida law.

20.     SEVERABILITY. If any provision of this Agreement or the application of the provision to any person or circumstance is illegal or invalid for any reason whatsoever, the illegality or invalidity shall not affect the validity of the remaining terms.

21.     OPPORTUNITY TO SEEK COUNSEL. Co-Author acknowledges by signing this Agreement that he has read and understands this document, that he has conferred with or had the opportunity to confer with an attorney of his/her choice regarding the terms and meaning of this Agreement, that he has had sufficient time to consider the terms provided for in this Agreement, that no representations or inducements have been made to him/her other than as set forth herein, and that he has signed the same knowingly and voluntarily.

22.     NOTICE. Any formal notices hereunder shall be in writing and shall be given either by personal delivery, fax (with confirmation from receiving party), express overnight mail carrier or by certified US mail, postage prepaid, return receipt requested, and the date of such personal delivery, fax confirmation from receiving party, or the date of signature on certified US Postal Service mailing, shall serve as the date of said notice. In each case addressed to the appropriate party at the address listed as follows:

Diveroli Address:

P.O. Box 1031, Unit A3

Coleman, FL 33521

Co-Author Address:

P.O. Box 1031, Unit D4

Coleman, FL 33521

Or to such other address as either party may provide to the other in accordance herewith.

23.     ENTIRE AGREEMENT. This Agreement constitutes the entire agreement of the parties relating to the subject matter contained herein. There are no representations, agreements, arrangements, or understandings, oral or written, between or among the parties relating to the subject matter of this Agreement that is not fully expressed specifically in this Agreement. Neither this Agreement nor any of its terms may be altered, amended, modified, canceled or waived other than by written instrument executed by each party hereto.

IN WITNESS WHEREOF, The parties have carefully reviewed this contract and agree to and accept its terms and conditions. The parties signed below are executing this Agreement as of the day and year first written above.

Signature: _____

Co-Author: _Mctthew Bevan Cox_____ (Print Co-Author Name)

Signature: _____
Subject: Efraim Diveroli

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.



United States Register of Copyrights and Director

and you may not be entitled to certain relief, remedies, and benefits under the copyright law.



**Form CA**
For Supplementary Registration
UNITED STATES COPYRIGHT OFFICE

**TXu 1 – 373 – 814**



TX | TXU | PA | PAU | VA | VAU | SR | SRU | RE
EFFECTIVE DATE OF SUPPLEMENTARY REGISTRATION

5 - 27 - 16
Month   Day   Year

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

## A

**Title of Work ▼**

Once A Gunrunner

**Registration Number of the Basic Registration ▼**

TXu001911676

**Name(s) of Author(s) ▼**

Efraim Deveroll

**Year of Basic Registration ▼**

2014

**Name(s) of Copyright Claimant(s) ▼**

Efraim Deveroll

## B

**Location and Nature of Incorrect Information in Basic Registration ▼**

Line Number 2     Line Heading or Description Name of Author

**Incorrect Information as It Appears In Basic Registration ▼**

Deveroll

**Corrected Information ▼**

Diveroll

**Explanation of Correction ▼**

Typographical Error

## C

**Location and Nature of Information In Basic Registration to be Amplified ▼**

Line Number 2     Line Heading or Description Name of Author

**Amplified Information and Explanation of Information ▼**

Mr. Matthew B.    Cox was inadvertently omitted as a co-author of the work.

**MORE ON BACK ▶**   • Complete all applicable spaces (D-G) on the reverse side of this page.
  • See detailed instructions.   • Sign the form at Space F.

DO NOT WRITE HERE
Page 1 of 3 pages

FORM CA RECEIVED

5-27-16

FUNDS RECEIVED DATE

EXAMINED BY K.LK.

CORRESPONDENCE ☐

REFERENCE TO THIS REGISTRATION ADDED TO
BASIC REGISTRATION ☑ YES ☐ NO

FORM CA

FOR
COPYRIGHT
OFFICE
USE
ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

Continuation Sheet for Part B
Of Form CA for Supplementary Registration

Continuation of:

Line 1 – Title of this Work

Incorrect Information as It Appears in Basic Registration: Once A Gunrunner

Corrected Information: Once a Gun Runner . . .

Explanation of Correction: Typographical Error

Continuation Sheet for Part C
Of Form CA for Supplementary Registration

Line 6 - Preexisting Material

Amplified Information: This work is a derivative of U.S. Copyright Registration No. TXu 1-983-899, which was filed for and issued after the application for this work was filed and registration issued.

Line 6 – Material Added to this Work

Amplified Information: Text

Correspondence Give name and address to which correspondence about this application should be sent.

Allison Imber, Esq.
255 South Orange Avenue, Suite 1400
Orlando, FL 32801

Phone ( 407, 841-2330          Fax ( 407-841-2343          Email aimber@addmg.com

Deposit Account If the registration fee is to be charged to a deposit account established in the Copyright Office, give name and number of account.

Name    Allen  Dyer  Doppelt,  Milbrath  +  Colchrest,  P.A.

Account Number   89508

Certification* I, the undersigned, hereby certify that I am the: (Check only one)

☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ duly authorized agent of

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name ▼   Efraim Diveroll          Date ▼ 4/25/16

Handwritten signature (X) ▼

Certificate
will be
mailed in
window
envelope
to this
address:

Name ▼
Robert Thornburg, Esq.

Number/Street/Apt ▼
1221 Brickell Avenue, No. 2400

City/State/ZIP ▼
Miami, FL 33131

*17 U.S.C. §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Form CA–Full   Rev: 10/2011   Printed on recycled paper

U.S. Government Printing Office: 2011-xxx-xxx/xx, xxx

| FORM CA RECEIVED | | FORM CA |
| --- | --- | --- |

5-27-16

FUNDS RECEIVED DATE

| EXAMINED BY $\quad$ KCL | | FOR COPYRIGHT OFFICE USE ONLY |
| --- | --- | --- |
| CORRESPONDENCE ☐ | | |

REFERENCE TO THIS REGISTRATION ADDED TO
BASIC REGISTRATION ☑ YES ☐ NO

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

Continuation of: ☐ Part B or ☑ Part C

Line 2 - Was this contribution to the work a "work made for hire?"
Amplified Information: No. Mr. Cox's contribution to the work was not made for hire.

Line 2 - Author's Nationality or Domicile
Amplified Information: United States. Mr. Cox is domiciled in the United States.

Line 2 - Was this author's contribution to the work anonymous or pseudonymous?
Amplified Information: No. Mr. Cox's contribution to the work was not anonymous or pseudonymous.

Line 2- Nature of Authorship
Amplified Information: Text.

Line 4 - Transfer
Amplified Information: Written Assignment. Mr. Cox transferred his copyrights in the work to Mr. Diveroli by written assignment.

Correspondence Give name and address to which correspondence about this application should be sent.

Allison Imber, Esq.
255 South Orange Avenue, Suite 1400
Orlando, FL 32801

Phone ( 407 ) 841-2330 $\qquad$ Fax ( 407 -841-2343 $\qquad$ Email aimber@addmg.com

Deposit Account If the registration fee is to be charged to a deposit account established in the Copyright Office, give name and number of account.

Name Allen Dyer Doppelt, Milbrath + Gilchrest, PA.

Account Number 89508

Certification* I, the undersigned, hereby certify that I am the: (Check only one)
☐ author
☐ owner of exclusive right(s)
☑ other copyright claimant
☐ duly authorized agent of

$\qquad$ Name of author or other copyright claimant, or owner of exclusive right(s) ▲
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name ▼ Efraim Diveroli

Date ▼ 4/25/16

Handwritten signature (X) ▼ _[signature]_

| Certificate will be mailed in window envelope to this address: | Name ▼ Robert Thornburg, Esq. |
| --- | --- |
| | Number/Street/Apt ▼ 1221 Brickell Avenue, No. 2400 |
| | City/State/ZIP ▼ Miami, FL 33131 |

YOU MUST:
• Complete all necessary spaces
• Sign your application in Space 8

SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material

MAIL TO:
Library of Congress
Copyright Office-CAD
101 Independence Avenue SE
Washington, DC 20559

*17 U.S.C. §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Form CA-Full Rev: 10/2011 Printed on recycled paper

U.S. Government Printing Office: 2011-xxx-xxx/xx,xxx

## COPYRIGHT ASSIGNMENT

WHEREAS, Efraim Diveroli, an individual with an address at 4444 Michigan Avenue, Miami Beach, FL 33140 (hereinafter "Assignor"), is the owner of all right, title, and interest (including all copyright rights) to U.S. Copyright Registration No. TXu001911676 and the works contained therein (hereinafter "the Works"); and

WHEREAS, Assignor desires to assign and transfer all right, title, and interest in the Works to Incarcerated Entertainment, LLC, a Florida limited liability company with an address at 2901 Kensington Trace, Tarpon Springs, FL 34688 (hereinafter "Assignee");

NOW, THEREFORE, Assignor, for TEN DOLLARS ($10.00) and other valuable consideration, receipt of which is hereby acknowledged, does hereby assign and transfer to Assignee all right, title, and interest in and to the Works, as well as all copyright rights therein, and any and all prior causes of action, damages, and/or rights which may have accrued prior to the date of this Assignment.

**EFRAIM DIVEROLI**

Signature: _____

Date: _4/25/2016_____

1

### Assignment of Life Story Rights

WHEREAS, Efraim Diveroli, an individual with an address at 4444 Michigan Ave., Miami Beach, FL 33140 (hereinafter "Assignor"), is the owner of all rights, title and interest to his life story rights (hereinafter "the Rights"); and

WHEREAS, Assignor desires to assign and transfer all right, title and interest in the Rights to incarcerated Entertainment, LLC, a Florida limited liability company with an address at 2901 Kensington Trace, Tarpon Springs, FL 34688 (hereinafter "Assignee"). The scope of the Rights conveyed are limited to the Rights which exist at the time of execution of this Agreement and does not include the right to future life story rights.

NOW, THEREFORE, Assignor, for TEN DOLLARS ($10.00) and other valuable consideration, receipt of which is hereby acknowledged, does hereby assign and transfer to Assignee all right, title and interest in and to the Rights, and any and all prior causes of action, damages, and/or rights which may have accrued prior to the date of this Agreement with regard to any infringement upon the Rights.

EFRAIM DIVEROLI

Signature: _Efraim D_____

Date: _4/25/16_____

EXHIBIT 5

---------------------------------------------------------------------------------------------------------

FROM: 40171018
TO: Kline, Matt; Turkel, Kenneth
SUBJECT: Communication with Counsel...
DATE: 04/22/2017 01:48:34 PM

>

Dear Mr. Turkel,

It is my understanding that on April 21 you filed an "opposition" to my request for leave to file a Reply. (Doc. No. 115). As soon as I receive a copy of your submission, I will determine if a response is appropriate. I do note, however, that you did not comply with Local Rule 3.01(c), which requires you to obtain the court's permission before filing your submission. See M.D. Fla. Local Rule 3.01(c)("No party shall file any reply or further memorandum directed to the motion or response...unless the Court grants leave.") I will, therefore be moving to strike your unauthorized submission.

I understand that you were not IE's counsel last April when Reback and Diveroli filed their original (fraudulent) lawsuit against Warner Bros. Pictures. It is further my understanding that your firm was retained to represent IE in connection with its SECOND complaint against Warner after IE had decided to withdraw its frivolous original complaint. See Doc. No. 89 at 2 ("Rather than oppose the motion, IE hired NEW counsel and WITHDREW its [original] complaint.")(emphasis added).

Look, I am not trying to visit the sins of the farther upon the son. I am not suggesting that your firm was complicit in IE's scheme to defraud Warner Bros. by bringing its frivolous and "objectively unreasonable" claim that Reback and Diveroli had manufactured. See Viva Video v. Cabrera, 9 Fed. App'x 77, 80 (2nd Cir. 2001)(claims are objectively unreasonable if they "have no legal or factual support"); see also Silberstein v. Fox Entm't Grp., 536 F. Supp. 2d 440, 444 (S.D.N.Y. 2008)(courts have concluded that claims that are "devoid of legal or factual basis ought to be deemed objectively unreasonable.")

Because of your late arrival in this matter, you have no first-hand basis of knowing what had, in fact, transpired earlier. Therefore, I am putting your law firm on notice that your clients -- Reback and Diveroli -- manufactured their fraudulent claim that Warner had stolen Diveroli's story to make the film "War Dogs." Understand, I was present during the conversation between Reback and Diveroli when they hatched their scheme to manufacture their fraudulent claim for the purpose of extracting an unwarranted settlement. (At the appropriate time I will divulge all of the pertinent facts relevant to Reback's and Diveroli's scheme which included, inter alia, utilizing Diveroli's cousin in LA to set the trap in order to manipulate the son of Warner Bros.' president into taking possession of the "Gun Runner" manuscript, so that Reback could then falsely claim that Warner Bros. had stolen elements of the story for its film.) This is the primary reason I could not participate in the earlier action. Not only have Reback and Diveroli committed a fraud on the court, Diveroli also committed a fraud on the Copyright Office by concealing these material facts.

It is my position that joinder is required under Rule 19(a)(1)(A) because neither IE nor Warner can obtain complete relief without resolving my claim altogether. In the event I am not permitted to intervene in the pending lawsuit, be advised that I will initiate independent civil actions against both IE and Warner which I will then move to have consolidated.

Best,
Matthew B. Cox

cc. Matthew Kline
O'Melveny & Myers LLP

EXHIBIT 6

-------------------------------------------------------------------------------------------------------

FROM: 40171018
TO: Biscay, Cameron; Kline, Matt; Turkel, Kenneth
SUBJECT: Missive...
DATE: 08/09/2017 12:21:33 PM

>

To: Matthew Kline
   O'Melveny & Myers, LLP

To: Kenneth Turkel
   Bajo, Cuva, Cohen, Turkel

   Re:  Incarcerated Entertainment v. Warner, No. 8:16-cv-1301-T-35-UA (IGC)

Gentlemen:

   I write to let Warner know that I have assembled the materials that are responsive to its subpoena request. However, there are two issues I would like to briefly address. First, the inmate copier here at Coleman is not working. The administration has posted a memorandum indicating that the copier will be serviced this week. (Those of us with experience in dealing with the BOP in such matters believe that's optimistic.) Nevertheless, I will include a copy of the institution memo along with the cover letter I'm sending when I mail Warner the materials.

   Second, I am troubled by the fact that I am asked to respond to a subpoena and participate in a deposition before the court rules on my motion to intervene. While I do not mind turning over materials that are relevant to the lawsuit, I do believe that what's going on is unfair because neither Warner nor IE has any obligation to provide anything to me. To that end, I'll be contacting the court because I believe the current posture is untenable. If I'm going to have to participate in producing evidence, it's only fair that I be allowed to make requests as well. If I were a party to the suit, I would certainly be allowed to do so.

   If the court decides to grant my motion to intervene, I'll promptly submit my discovery demands. If, however, the court denies my motion to intervene, I will immediately file a notice of appeal with the Eleventh Circuit, and I will also initiate independent civil actions against Warner and IE that I will then move to consolidate.

   As I've previously indicated, I have a right to intervene because I have alleged claims of copyright infringement and fraud on the Copyright Office. See 17 U.S.C. section 501(b) (stating the court "shall permit the intervention of any person having or claiming an interest in the copyright").

   Also, a review of the factual contentions IE made in its original complaint reveals that Diveroli had a preexisting contractual relationship with Guy Lawson that Diveroli intentionally concealed from me during the course of our negotiations and throughout our relationship. See Original Complaint (Doc. No 1) at para. 31-32, 34-35. The representations that Diveroli made to persuade me to write the memoir were false or materially inaccurate. IE's complaint conclusively establishes that the agreement between Diveroli and I was procured through fraud in the inducement. Based upon these acts, the agreement between Diveroli and I is void.

   If I am permitted to conduct discovery, I will be able to obtain the evidence from IE and Diveroli to establish that the contract between Diveroli and I is void and, therefore, that I am the rightful owner of the copyright. By establishing these facts, I will have substantiated my claim that IE lacks standing to sue Warner and that I am the proper plaintiff.

   I just recently obtained a copy of the court's docket and discovered that there is some kind of mediation conference scheduled for later this month. I want to inform both Warner and IE that I object to any mediation conference taking place without my being afforded an opportunity to participate as well.

Best,
Matthew B. Cox